UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JACQUES SYLVESTRE,

          Plaintiff,

    v.                                 Civil Action No.:

JS NORTH SHORE MOTORS, LLC dba
ADVANTAGE HONDA,

          Defendant.

## STATEMENT OF CLAIM

Plaintiff, Jacques Sylvestre ("Sylvestre" or "Plaintiff"), brings this action to secure redress against unlawful, unfair, abusive and deceptive lending and business practices engaged in by defendant, JS North Shore Motors, LLC dba Advantage Honda ("Advantage Honda" or, "Defendant") relating to an automobile purchase transaction and alleges as follows:

## NATURE OF THIS ACTION

1.    Toward the end of Plaintiff's vehicle lease term, pleased with his leased vehicle, Plaintiff returned to the dealer that initiated the lease 3 years earlier to negotiate his financed purchase of the vehicle. The parties agreed on terms and Plaintiff believed the vehicle was his. However, despite executing a deal with Defendant, the original lessor, non-party Honda financial services, repossessed the vehicle. As it would be later revealed, Defendant purported to sell the vehicle to Plaintiff even though it did not own the vehicle or have authority to sell it. In the process, Defendant stole a $6,000.00 down payment from Plaintiff.

2. In this action Plaintiff seeks, among other things, statutory and actual money damages against Defendant for, *inter alia*, violations of the federal Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the New York Motor Vehicle Retail Installment Sales Act, Sec. 302 *et. seq.* ("NY MVRISA"); New York General Business Law §349, and common law claims for fraud and conversion.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 15 U.S.C. § 1640 (TILA).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendant auto dealership maintains offices, transacts business, and is otherwise found in this district.

## PARTIES

6. Plaintiff is a natural person residing in the Queens County, New York.

7. Upon information and belief, Defendant, a new and used car dealership, is a domestic corporation organized and existing under the laws of the State of New York with a place of business located at 1260 Northern Blvd., Manhasset, NY 11030-3018.

## FACTS

8. Plaintiff is a former customer of Defendant, having entered into a motor vehicle lease agreement with Defendant on or about February 8, 2017 in connection with the lease (the "Lease") of a new, 2017 Honda Accord, vehicle identification number 1HGCR2F86HA116340 (the "Vehicle"). The prior Lease transaction is not at direct issue in this litigation.

*The Sale Transaction*

9. The last payment due on the Lease was in January 2020 and the Vehicle was scheduled to be surrendered at the end of February 2020. Plaintiff was pleased with the Vehicle and so approached Defendant about financing his purchase of the Vehicle. To that end, on February 27, 2020 Plaintiff visited Defendant's dealership and met with a gentleman introduced as "Reniel Williams" a "sales representative". Mr. Williams advocated for Plaintiff's purchase of the Vehicle and assured Plaintiff that the prior three lease payments, which had not been paid and were in arrears, would be "rolled into" Plaintiff's finance purchase of the Vehicle.

10. Notably, according to the Lease, there was an end of lease term buyout option in the amount of $16,310.25.

11. Despite the stated end of lease term buyout option of $16,310.25, Defendant agreed to sell the Vehicle to Plaintiff for $20,239.03 (the "Purchase Price"). It was further agreed that Plaintiff would make a $6,000.00 down payment towards the Purchase Price (the "Down Payment") with the balance to be financed.

12. To memorialize the transaction, the parties executed a "Retail Installment Contract Simple Finance Charge" agreement (the "RISC").

13. The RISC lists the following content, figures, and calculations:

- Buyer – Jacques Frantzy Sylvestre and "Seller – Creditor" JS North Shore Motors DBA Advantage Honda

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JACQUES FRANTZY SYLVESTRE 3427 MURRAY ST FLUSHING NY 11354 QUEENS | N/A | JS NORTH SHORE MOTORS LLC DBA ADVANTAGE HONDA 1260 NORTHERN BLVD MANHASSET NY 11030 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2017 | HONDA ACCORD S | 1HGCR2F86HA116340 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural  N/A |

- cash sale price of $22,212.74, inclusive of $1,973.71 in sales tax.

**ITEMIZATION OF AMOUNT FINANCED**
1 Cash Price (including $ 1973.71 sales tax)                                  $ 22212.74 (1)

- Down Payment of $6,000.00



2 Total Downpayment =
   Your trade-in is a  N/A
                      Year    Make    Model    Vehicle Identification No.
   Gross Trade-In Allowance                                        $ N/A
   Less Prior Credit or Lease Balance (e)                          $ N/A
   Equals Net Trade In                                             $ N/A
   + Cash                                                          $ 6000.00
   + Other  N/A                                                    $ N/A
   + Other  N/A                                                    $ N/A
   (If total downpayment is negative, enter "0" and see 4I below)  $ 6000.00 (2)
3 Unpaid Balance of Cash Price (1 minus 2)                         $ 16212.74 (3)

- Other costs in the itemization of amount financed including a "VSA" charge of $2,000.00 which Plaintiff did not ask for, $277.00 for "government license and/or registration fee" and a $75.00 "processing fee".

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

4

**4 Other Charges Including Amounts Paid to Others on Your Behalf**
(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance
  Paid to Insurance Company or Companies
    Life                                              $ N/A
    Disability                                        $ N/A           $ N/A
B Vendor's Single Interest Insurance Paid to Insurance Company       $ N/A
C Other Optional Insurance Paid to Insurance Company or Companies    $ N/A
D Fees Paid to Government Agencies
    to N/A            for N/A                        $ N/A
    to N/A            for N/A                        $ N/A
    to N/A            for N/A                        $ N/A
E Government Taxes Not Included in Cash Price                         $ N/A
F Government License and/or Registration Fees
    REG FEE $240 / INSP FEE $37                                       $ 277.00
G Government Certificate of Title Fees                                $ N/A
H Government Waste Tire Management Fee                                $ N/A
I Other Charges (Seller must identify who is paid and describe purpose)
    to N/A            for Prior Credit or Lease Balance (e)  $ N/A
    to ATH            for VSA                                $ 2000.00
    to JS NORTH SHORE for PROCESSING FEE                     $ 75.00
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A
    to N/A            for N/A                                $ N/A

Total Other Charges and Amounts Paid to Others on Your Behalf        $ 2352.00 (4)
                                                                     $ 18564.74 (5)

- The Truth in Lending Act mandatory disclosure boxes at the top of the RISC shows the Annual Percentage Rate as 17.90%, the finance charge as $11,845.00, the amount financed as $18,564.74, the total of Payments as $30,410.74, and a total sale price of $36,410.64 inclusive of the $6,000.00 down payment.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 6000.00 is |
|---|---|---|---|---|
| 17.90 % | $ 11845.90 | $ 18564.74 | $ 30410.64 | $ 36410.64 |

- The payment schedule in the RISC states that there are 72 payments of $422.37, paid monthly, beginning on March 28, 2020.

| Your Payment Schedule Will Be: | | | (e) means an estimate |
|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | |
| 72 | 422.37 | Monthly beginning 03/28/2020 | |
| N/A | N/A | N/A | |

14. Plaintiff paid the $6,000.00 Down Payment by presenting a $5,000.00 cashier's check and the remaining $1,000.00 charged to Plaintiff's bank debit card.

15. Plaintiff left Defendant's dealership on February 27, 2020 with the Vehicle and, in reliance on Defendant's representations that Plaintiff was the Vehicle's owner, that all his obligations under the Lease had been satisfied and that he was otherwise in good standing.

***The Vehicle Repossession***

16. Days after Plaintiff executed the RISC and took possession of the Vehicle, the original lessor of the Vehicle, non-party Honda Financials Services ("HFS"), called Plaintiff advising that the Lease account was delinquent and had not been paid. Plaintiff informed HFS that he had purchased the Vehicle from Defendant and believed that he had resolved all outstanding issues under the Lease.

17. Plaintiff thereafter spoke repeatedly with representatives of Defendant and was given multiple and conflicting explanations for the debt collection calls from HFS and assured Plaintiff that he had nothing to worry about.

18. Soon thereafter, Plaintiff woke up one morning to find that the Vehicle was gone and had been repossessed by HFS.

19. HFS instructed Plaintiff that in order to get the Vehicle back, he would have to pay for storage fees, repossession costs and would need to make other arrangements with Defendant.

20. Plaintiff spent hours on the phone over the course of a few weeks with HFS and Defendant without any resolution. HFS blamed Defendant who in turn blamed HFS.

21. Being without a vehicle, especially during the Covid-19 pandemic, has caused extraordinary stress and hardship to Plaintiff. As an asthmatic, Plaintiff is in a high-risk category for Covid. Without a vehicle, Plaintiff was forced to rely on public transportation to commute to and from work. As a Covid high-risk individual, this unnecessary potential exposure caused tremendous stress in Plaintiff.

22. Additionally, HFS has reported the Vehicle repossession on Plaintiff's consumer credit reports. This credit reporting has caused substantial damage to Plaintiff including but not limited to rejection for other lines of consumer credit and more costly credit on less favorable terms than Plaintiff would have been granted but for the Vehicle repossession reporting.

23. On or about May 22, 2020, HFS notified Plaintiff that it had sold the Vehicle at auction for $11,000.00 - nearly half as much as Defendant had agreed to sell the Vehicle for to Plaintiff. HFS has sought payment from Plaintiff for a deficiency balance of $7,728.03 inclusive of unpaid Lease payments and repossession costs.

**FIRST CAUSE OF ACTION**
**<u>VIOLATIONS OF TILA</u>**
(15 U.S.C. § 1601 *et. seq*. TILA)

24. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

25. Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of TILA, and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

26. Defendant regularly extends or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

27. Defendant is creditor within the meaning of TILA and Regulation Z, 15 USC § 1602(f) and Reg Z § 226.2(a)(17).

28. The RISC lists a motor vehicle, an article of personal property, as collateral.

29. The RISC is a written agreement, payable in more than four installments.

30. The finance charge indicated on the RISC exceeds $1,000.00.

31. The copy of the RISC that was provided to Plaintiff is inconsistent with oral disclosures made by Defendant on the date of the transaction.

32. Plaintiff was not provided disclosures that conform with the obligations under TILA and Regulation Z inasmuch as the costs of credit, including the true cash price, APR, amount financed, and finance charge are misstated.

33. The "VSA" fee of $2,000 was inserted into the RISC as a requirement for the extension of credit and is, therefore, an undisclosed "finance charge" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

34. As a result of Defendant's failure to include this $2,000 "VSA" charge as a finance charge, the sale price, finance charge, amount financed, and APR disclosed in

8

the RISC are all materially misstated, in violation of TILA § 1638(a) and Regulation Z §226.18.

35. The RISC wrongly identifies Defendant as the seller as of the Vehicle. At the time of execution of the RISC, title to the Vehicle was not vested in Defendant and Defendant did not have authority to sell it.

36. Defendant also failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA §§ 1631 and 1632 and Regulation Z.

37. HFS' repeated demands for lease payments that Defendant told Plaintiff would be rolled into the finance transaction and the repossession costs are "finance charges" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

38. Defendant failed to disclose these and/or other fees and charges, and failed to include these and/or other fees and charges as finance charges, in violation of TILA and Regulation Z.

39. As a result of Defendant's failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in RISC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

40. Had Defendant provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the Vehicle on the terms and conditions imposed on by Defendant.

41. Additionally, had Defendant provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained alternate, lower cost financing.

42. Based on the foregoing, Defendant is liable under TILA and Regulation Z for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that Defendant has violated TILA and Regulation Z, and for such other or further relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK MOTOR**
**VEHICLE RETAIL INSTALLMENT SALES ACT § 302, et seq.**
(N.Y.P.P.L. § 301 *et seq.*)

43. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

44. Defendant is a "retailer seller" within the meaning of MVRISA §301(3).

45. The transaction as described above involved a "retail installment sale" within the meaning of MVRISA §301(4).

46. MVRISA §302(4) requires that the RISC "contain the names of the seller and the buyer".

47. The RISC identified Defendant as the seller of the Vehicle though apparently the Vehicle did not belong to Defendant and Defendant did not have authority to sell it.

48. MVRISA expressly incorporates all TILA disclosure requirements, providing, in addition to all of its other requirements that "[a]ll items required to be disclosed by the act of congress entitled "Truth in Lending Act" and the regulations thereunder, as such act and regulations may from time to time be amended." §302(5)(1).

49. As set forth above, Defendant violated numerous TILA provisions.

50. As set forth above, the RISC provided to Plaintiff, was in gross violation of TILA's requirements.

51. The violations set forth herein were both knowing and willful.

52. Defendant had ample opportunities to correct the violations but failed to do so.

53. For all of the reasons stated herein, under MVRISA § 307, Defendant is barred from recovering any credit service charge, delinquency, or collection charge on the RISC and Plaintiff is entitled to costs and attorney's fees.

54. Based on the foregoing, Defendant is liable under MVRISA for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that Defendant violated MVRISA, and for such other or further relief as the Court deems appropriate.

## THIRD CAUSE OF ACTION
## DECEPTIVE TRADE PRACTICES
(N.Y. Gen. Bus. Law § 349(h))

55. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

56. Plaintiff is a person within the meaning of N.Y. Gen. Bus. Law § 349(h) who has been injured by reason of the deceptive acts or practices of Defendants.

57. Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

58. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative,

such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

59. Defendant's conduct and statements were materially misleading.

60. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

61. As a result of these violations of NYGBL §349, Plaintiff has suffered pecuniary and non-pecuniary harm.

62. Upon information and belief, Defendant's violations were willful and knowing and committed in bad faith.

63. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), and declaratory judgment that Frontline's practices are deceptive as defined under § 349.

**FOURTH CAUSE OF ACTION**
**COMMON LAW FRAUD**

64. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

65. Defendant asserted false representations of material facts as set forth above, including but not limited to, that Defendant was the seller of the Vehicle, that Defendant had title and authority to sell Plaintiff the Vehicle, that by executing the RISC, Plaintiff had a binding contract, that Plaintiff had financing and that the financing was on specific terms, and that Plaintiff had purchased the Vehicle.

66. Upon information and belief, Defendant knew that the representations were false, or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to it.  This is because, upon information and belief, Defendant knew the Vehicle would not be sold to Plaintiff under the terms represented.

67. Defendant made these false representations for the purpose of defrauding Plaintiff.  Had Defendant told Plaintiff the truth, Plaintiff would not have entered into the transaction.

68. Plaintiff justifiably relied upon the misrepresentations and paid the $6,000.00 Down Payment, reasonably believing he had a deal and had purchased the Vehicle and that the terms of that deal were clear and final.

69. Plaintiff has suffered damages as a direct result of the reliance upon these misrepresentations.

## FIFTH CAUSE OF ACTION
(Conversion)

70. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

71. At all times relevant hereto, Plaintiff had the exclusive right of possession to his $6,000.00 Down Payment.

72. When Defendant accepted the $6,000.00 Down Payment with knowledge that the RISC would be void, Defendant exceeded its possessory right in the $6,000.00 Down Payment without Plaintiff's consent or legal justification.

73. Plaintiff notified Defendant that it wrongfully converted the $6,000.00 Down Payment.

74. Defendant acted with deceit, malice, fraud and with reckless disregard for the rights of Plaintiff.

75. The taking and retention of the $6,000.00 Down Payment constitutes an unlawful acquisition of Plaintiff's property by Defendant.

76. Defendant's unlawful acquisition was made in conscious disregard of Plaintiff's rights and constitutes willful and/or wanton negligence.

77. By reason of the foregoing, Plaintiff is entitled to a money judgment in an amount to be proven at trial.

### **SIXTH CAUSE OF ACTION**
(Breach of Contract)

78. Plaintiff repeats, realleges and reiterates each of the foregoing paragraphs as though fully set forth herein.

79. Plaintiff fully performed all his obligations under the RISC.

80. Defendant contracted and agreed to sell the Vehicle to Plaintiff in accordance with the terms as stated in the RISC.

81. Defendant breached its duties and obligations under the RISC by, among other things, failing to deliver ownership of the Vehicle to Plaintiff.

82. Defendant's breaches of the RISC caused Plaintiff to suffer damages in an amount to be proven at trial together with, pursuant to N.Y. NY GBL § 5-327, Plaintiff's reasonable attorneys' fees and costs.

### **SEVENTH CAUSE OF ACTION**
(Breach of Warranty of Title)

83. Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

84. There is implied in a contract for sale a warranty by the seller that (1) title conveyed shall be good, and its transfer rightful; and (2) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

85. Sale of the Vehicle under the RISC was subject to an implied warranty of title.

86. Defendant breached the warranty of title as described above causing damage to Plaintiff

87. Based upon Defendant's violation of the warranty of title, Plaintiff demands an award of damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in its favor and grant the following relief:

1. **On the First Cause of Action:**
   An award in favor of Plaintiff and against Defendant for violating TILA awarding (a) statutory damages, (b) actual damages (c) costs; and (d) reasonable attorneys' fees;

2. **On the Second Cause of Action:**
   An award in favor of Plaintiff and against Defendant for violating the MVRISA awarding (a) statutory damages, (b) actual damages (c) costs; and (d) reasonable attorneys' fees;

3. **On the Third Cause of Action:**
   An award in favor of Plaintiff and against Defendant for violating NYGBL §349 awarding (a) actual damages, (b) three times the actual damages up to $1,000.00, and (c) costs and reasonable attorneys' fees;

4. **On the Fourth Cause of Action:**
   An award in favor of Plaintiff and against Defendant for fraud awarding actual, exemplary and punitive damages, and attorney's fees and costs;

5. **On the Fifth Cause of Action:**
   An award in favor Plaintiff and against Defendant for its conversion of the $6,000.00 Down Payment including, but not limited to, incidental and consequential damages, punitive damages and attorney fees;

15

6. **On the Sixth Cause of Action:**
   Awarding a money judgment in favor of Plaintiff an against Defendant in an amount to be proven at trial

7. **On the Seventh Cause of Action:**
   Awarding a money judgment in favor of Plaintiff an against Defendant in an amount to be proven at trial;

8. Any additional and further relief as may be deemed just and appropriate.

Dated: Nyack, New York
December 8, 2020

**THE LAW OFFICES OF**
**ROBERT J. NAHOUM, P.C.**
*Attorneys for Plaintiff*

By:_____
**ROBERT J. NAHOUM**
48 Burd Street, Suite 300
Nyack, NY 10960
Telephone No.: (845) 450-2906
Facsimile No.: (888) 450-8640
Email: RJN@NahoumLaw.com

*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New YorkNY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net